UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

Civil Action No. 3:17-00262

| | |
|---|---|
| SPIROFLOW SYSTEMS, INC. )<br>)<br>Plaintiff/Counter-Defendant, )<br>v. )<br>)<br>LOUISIANA-PACIFIC CANADA, LTD )<br>)<br>Defendant/Counter-Plaintiff. ) | **ANSWER AND COUNTERCLAIMS** |

Defendant, LOUISIANA-PACIFIC CANADA, LTD ("LP Canada"), by and through their undersigned counsel, responds to Spiroflow Systems, Inc.'s ("Spiroflow") Complaint as follows:

1. Admitted.

2. LP Canada states that it is a British Columbia corporation, a subsidiary of LP Corporation, and maintains its principal place of business in Nashville, Tennessee. LP Canada denies all allegations in paragraph two that are inconsistent with the foregoing.

3. LP Canada admits that the United States District Court for the Middle District of Tennessee has jurisdiction under 28 U.S.C. § 1332. LP Canada denies that venue is proper in this Court and admits that, pursuant to the parties' agreement, the proper forum and venue for this litigation lies in Tennessee. LP Canada denies all allegations in paragraph three that are inconsistent with the foregoing.

4. LP Canada denies the allegations in paragraph four as stated. LP Canada admits that it entered into an Equipment Purchase Agreement ("EPA") with Spiroflow effective May 12,

2015 under which Spiroflow was to manufacture and install a Zinc Borate Delivery System ("ZB System"). LP Canada attaches a true and correct copy of the EPA as Exhibit A. LP Canada denies all allegations in paragraph four that are inconsistent with the foregoing.

5. LP Canada denies the allegations in paragraph five as stated. LP Canada admits that the EPA governs the parties and denies all allegations that are inconsistent with the terms and conditions of the EPA. LP Canada denies all allegations in paragraph five that are inconsistent with the foregoing.

6. LP Canada admits that Spiroflow manufactured and installed the ZB System but denies that this equipment functioned properly. LP Canada admits that it paid some, but not all, of Spiroflow's invoices due to Spiroflow's breach of its contractual obligations to install a workable ZB System. LP Canada further admits that it incurred costs and expenses to install a newly designed ZB System and that this amount more than offsets any amounts listed in Spiroflow's invoices. LP Canada denies all allegations in paragraph six that are inconsistent with the foregoing.

7. LP Canada admits that, almost immediately upon activating Spiroflow's ZB System in November 2015, it noticed and complained of various problems, including a conveyor drive chain that did not properly function. LP Canada notified Spiroflow of these issues, including sending a video. LP Canada denies that Spiroflow's ZB System satisfied its obligations under the contract. LP Canada admits that Spiroflow agreed to manufacture and provide it with a newly designed ZB System at no additional charge but also agreed to bear the cost of removing the old ZB System and bear costs associated with installing the new ZB System. LP Canada denies all allegations in paragraph seven that are inconsistent with the foregoing.

2

8. LP Canada denies the allegations in paragraph eight as stated.  LP Canada admits that, due to Spiroflow's failure to supply a satisfactory ZB System as the EPA required, Spiroflow agreed that it would (1) redesign and refabricate the ZB System at its expense, (2) bear the cost of removing the old ZB System, and (3) bear costs associated with installing the new ZB System.  LP Canada admits that Spiroflow, after initially agreeing to pay all of the installation-related costs, it reneged on its promise and offered $40,000 toward payment of the installer's quote of $211,100 CAD, plus tax.  LP Canada denies all allegations in paragraph eight that are inconsistent with the foregoing.

9. LP Canada denies that it is liable to Spiroflow for any amount under any legal theory.

10. Denied.

11. LP Canada admits that Spiroflow made a payment demand, but denies that it is obligated to pay this payment demand.

12. The allegations set forth in paragraph twelve constitute a legal conclusion to which no response is required.  To the extent a response is required, LP Canada denies that North Carolina law applies to the parties' contract or dispute, or that it is liable to Spiroflow in any amount under any legal theory.  LP Canada denies all allegations in paragraph twelve that are inconsistent with the foregoing.

13. The allegations set forth in paragraph thirteen constitute a legal conclusion to which no response is required.  To the extent a response is required, LP Canada denies that North Carolina law applies to the parties' contract or dispute, or that it is liable to Spiroflow in any

3

amount under any legal theory.  LP Canada denies all allegations in paragraph thirteen that are inconsistent with the foregoing.

14. Denied.

15. LP Canada denies that it is liable to Spiroflow in any amount under any legal theory whatsoever, including the amounts sought in paragraphs 1 through 3 of Spiroflow's prayer for relief.

## AFFIRMATIVE DEFENSES

1. LP Canada affirmatively asserts that the complaint fails to state a claim upon which relief may be granted.

2. LP Canada affirmatively asserts that the proper jurisdiction and venue for this action lies in the United States District Court for the Middle District of Tennessee, Nashville Division.

3. LP Canada affirmatively asserts the doctrine of unclean hands.

4. LP Canada affirmatively asserts that Spiroflow failed to fulfill a condition precedent.

5. LP Canada affirmatively asserts the defense of arbitration.

6. LP Canada affirmatively asserts the doctrines of offset and recoupment.

## COUNTERCLAIM

Now having fully answered, Louisiana-Pacific Canada, Ltd ("LP Canada"), pursuant to Federal Rule of Civil Procedure 13, assumes the role of counter-plaintiff and states the following for its causes of action against Spiroflow Systems, Inc. ("Spiroflow").

4

1. LP Canada is a British Columbia corporation with its principal place of business in Nashville, Tennessee.

2. Spiroflow is a North Carolina corporation with its principal place of business in Monroe, North Carolina.

3. Jurisdiction and venue are proper in the United States District Court for the Middle District of Tennessee pursuant to 28 U.S.C. § 1332 and the parties' agreement selecting Tennessee-based courts as the proper venue for any dispute.

4. On May 12, 2015, LP Canada and Spiroflow entered into a contract titled "Louisiana-Pacific Canada Ltd Equipment Purchase Agreement" (hereinafter "EPA"). A true and correct copy of the EPA is attached to this Answer and Counterclaim as Exhibit A.

5. Under the EPA, Spiroflow agreed to manufacture and deliver to LP Canada a Zinc Borate Delivery System ("ZB System") for use in LP Canada's exterior siding manufacturing facility in Minitonas, Manitoba.

6. Under the EPA, Spiroflow warranted that its ZB System would be free of defects in design, materials, and workmanship.

7. Under the EPA, Spiroflow warranted that its ZB System would be of merchantable quality.

8. Under the EPA, Spiroflow warranted that its ZB System would be fit for a particular purpose; namely, fit for operation in accordance with certain performance specifications.

9. Spiroflow delivered the ZB System to LP Canada in November 2015. Spiroflow representatives and a third-party, Systematic Mills Installation, Ltd. ("Systematic") installed the ZB System.

10. LP Canada incurred issues with the ZB System almost immediately upon using the ZB System post installation. For example, the ZB System contained a defective design that led to excessive conveyor chain wear and slow operation speeds. On December 2, 2015, LP Canada employee Lam Nguyen sent an email to Spiroflow employee Steve Simmons identifying issues with the conveyor drive chain. Mr. Nguyen also sent Mr. Simmons a video showing the chain-related issues.

11. LP Canada closed its facility operations from December 11, 2016 through January 4, 2016. Upon re-opening operations in January 2016, the ZB System continued to exhibit problems and issues. Mr. Nguyen again informed Mr. Simmons of these issues.

12. In early March 2016, Mr. Simmons, on behalf of Spiroflow, visited LP Canada's Minitonas facility to observe the ZB System in operation. In a March 15, 2016 conference call between LP Canada representatives and Spiroflow representatives, Mr. Simmons stated that, based on his observations and findings during the site visit, the ZB System exhibited problems such as: a grinding noise and evidence of dragging at the top of the incline section; high temperature of the tube conveyor; physical evidence of chain elongation, which was greater than expected; and unusual disc wear.

13. During the March 15, 2016 conference call, Spiroflow representatives agreed that Spiroflow would redesign and refabricate the ZB System at Spiroflow's expense; bear the costs of removing the defective ZB System; and bear costs associated with installing a new, redesigned ZB System.

14.     During the March 15, 2016 conference call, Spiroflow employee Don Mackrill asked LP Canada representatives for the contact information for the contractor used for the original installation (Systematic).  Mr. Mackrill agreed that he would contact Systematic and obtain a quote for the installation work.

15.     On March 16, 2016, LP Canada employee Tony Hamill sent Spiroflow representatives, including Don Mackrill, minutes from the March 15, 2016 conference call.  Mr. Hamill closed the email communication requesting Spiroflow to "[p]lease advise if there are any errors or omissions" in the minutes.  Spiroflow never identified any errors or omissions in the minutes or Spiroflow's agreement to pay all costs associated with fabricating and installing a new ZB System.  Instead, on March 18, 2016, Mr. Mackrill responded that Spiroflow would begin work on the items to which Spiroflow agreed it would perform.

16.     Although Mr. Mackrill, on March 15, 2016, agreed that he would contact the installation contractor, Systematic, for a quote to install the newly designed ZB System, and although LP Canada supplied Mr. Mackrill with Systematic's contact information, by April 5, 2016 Mr. Mackrill still had not solicited a quote from Systematic.

17.     While Spiroflow was ostensibly attempting to obtain a quote from Systematic for installation of the newly designed ZB System, LP Canada identified vendors to supply other parts and services necessary for Spiroflow's fabrication and installation of a newly designed ZB System.  Specifically, on May 4, 2016, LP Canada issued a purchase order to Eaglemere Logistics to supply dedicated drivers to transport Spiroflow chains and sprockets to LP Canada's facility.  On May 6, 2016, LP Canada issued a purchase order to Pearl Engineering, in the amount of $19,700 USD for structural modifications associated with Spiroflow's newly designed ZB System.  LP Canada also issued purchase orders to Intertek Testing in the amount of

7

$2,314.76 USD and to Tarpon for $13,262.00 USD for parts, services, and governmental approvals related to Spiroflow's newly designed ZB System.

18. On May 12, 2016, Mr. Mackrill informed LP Canada that Spiroflow planned to use Systematic for installation of the newly designed ZB System, but had not received a quote from Systematic.

19. On May 26, 2016, in response to Spiroflow's solicitation of a quote for installation services, Systematic sent a quote for $211,100 CAD to Spiroflow.

20. On May 31, 2016, Spiroflow representatives and LP Canada representatives held a conference call to discuss readiness for installation of the newly designed ZB System. Spiroflow representatives stated that all components would be onsite and ready for installation by June 10, 2016. Based upon Spiroflow's representations, LP Canada made plans to close its facility for installation.

21. On June 2, 2016, Mr. Mackrill, contrary to his earlier representations and promises, informed LP Canada that Spiroflow will not pay for the installation of its newly designed ZB System.

22. Because LP Canada, based on Spiroflow representations, previously scheduled a facility shut-down to install the newly designed ZB System, LP Canada went forward with the installation to avoid incurring additional expenses and lost revenues.

23. Throughout this process, Spiroflow sent invoices to LP Canada for a total of $771,367.98 USD. LP Canada paid Spiroflow the total of $611,820.00 USD. The difference between these two amounts equals $159,547.98.

24. Due to Spiroflow's failure to adhere to its contractual obligations, failure to provide a ZB System without design defects, and failure to adhere to its remediation promises, LP Canada spent a total of $194,845.85 USD to remedy the problems and defects with Spiroflow's ZB System.

25. Under the EPA, Spiroflow breached the EPA if it tendered a nonconforming or defective ZB System. Spiroflow in fact delivered a nonconforming and defective ZB System.

26. Under the EPA, one of LP Canada's remedies for Spiroflow's breaching the EPA was to deduct from any payment due to Spiroflow any money that Spiroflow then owed to LP Canada. In accordance with this contractual provision, LP Canada deducted $194,845.85 from the balance it owed Spiroflow, $159,547.98. After this deduction, Spiroflow still owes LP Canada a principal balance of $35,297.87 USD.

### COUNT I—BREACH OF CONTRACT

27. LP Canada incorporates paragraphs 1 through 26 of its Counterclaim as if fully set forth herein.

28. LP Canada and Spiroflow entered into the EPA, and the EPA is a valid contract.

29. The EPA obligated Spiroflow to deliver and install an operational ZB System that was free of defects in design, materials, and workmanship.

30. Spiroflow breached the EPA by failing to provide LP Canada with a ZB System that was free of defects in design, materials, and workmanship.

31. As a result of Spiroflow's breach, LP Canada has suffered damages associated with correcting the defective ZB System that Spiroflow supplied.

9

## COUNT II—BREACH OF WARRANTY OF MERCHANTABILITY

32. LP Canada incorporates paragraphs 1 through 31 of its Counterclaim as if fully set forth herein.

33. Spiroflow expressly warranted that it would supply LP Canada a ZB System that was of merchantable quality.

34. Spiroflow breached this express warranty by failing to supply LP Canada with a ZB System that was of merchantable quality.

35. As a result of Spiroflow's breach of warranty of merchantability, LP Canada incurred incidental, consequential, lost profits, and related damages.

## COUNT III—BREACH OF WARRANTY OF FITNESS FOR PARTICULAR PURPOSE

36. LP Canada incorporates paragraphs 1 through 35 of its Counterclaim as if fully set forth herein.

37. Spiroflow expressly warranted that its ZB System would be fit for operation in conjunction with LP Canada's specific operations and in accordance with certain performance specifications.

38. Spiroflow breached this express warranty by supplying a ZB System that failed to meet LP Canada's operational necessities.

39. As a result of Spiroflow's breach of this express warranty of fitness for a particular purpose, LP Canada suffered incidental, consequential, lost profits, and related damages.

## COUNT IV—BREACH OF CONTRACT

40. LP Canada incorporates paragraphs 1 through 39 of its Counterclaim as if fully set forth herein.

41. Following Spiroflow's breaches of the EPA and various express warranties, Spiroflow further promised through written and oral representations that it would redesign the ZB System to correct the defects of the original system and pay for all costs associated with that endeavor.

42. Despite its contractual promises, Spiroflow refused to pay for the costs that LP Canada incurred related to installation of the newly designed ZB System.

43. As a result of Spiroflow's breach of its contractual promises, LP Canada suffered damages.

## COUNT V—BREACH OF GOOD FAITH AND FAIR DEALING

44. LP Canada incorporates paragraphs 1 through 43 of its Counterclaim as if fully set forth herein.

45. Tennessee law governs the EPA.

46. Tennessee common law implies a duty of good faith and fair dealing associated with contract compliance.

47. Spiroflow had a common-law duty to exercise good faith and deal fairly with LP Canada in the administration and implementation of its obligations under the EPA.

48. Spiroflow breached its duty to administer the EPA in good faith and deal fairly LP Canada by representing to LP Canada that it would pay for all costs associated with redesigning

and installing a new ZB System, including taking charge of soliciting a quote from the installer, Systematic, thereby inducing LP Canada to schedule a facility shut-down for the installation, and then, without notice or justification, refusing to pay for the redesign and installation services.

49. As a result of Spiroflow's breach of its duty of good faith and fair dealing, LP Canada suffered damages.

## COUNT VI—DECLARATORY JUDGMENT

50. LP Canada incorporates paragraphs 1 through 49 of its Counterclaim as if fully set forth herein.

51. In accordance with 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, LP Canada seeks a declaratory judgment that, pursuant to the EPA, it may offset any monies that it owes Spiroflow by the amounts that Spiroflow owes it.

## PRAYER FOR RELIEF

52. LP Canada requests that the Court order the following relief:

A. A Declaratory Judgment that Spiroflow's alleged damages for unpaid invoices of $159,547.98 USD is offset by the amount that Spiroflow owes LP Canada, $194,845.85 USD;

B. A monetary judgment in the principal amount of $35,297.87;

C. An award for other incidental and consequential damages to which LP Canada is entitled under the EPA, Tennessee common law, and/or the Tennessee Uniform Commercial Code, including, but not limited to, lost profits;

D. An award for attorneys' fees and costs associated with defending and prosecuting this lawsuit;

E. An award for pre-judgment interest;

F. A jury to try this cause of action; and

G. Any other remedy that the Court deems appropriate.

This the 24th day of May, 2017.

                          CRANFILL SUMNER & HARTZOG LLP

                    BY:   */s/ Richard T. Boyette*
                          RICHARD T. BOYETTE
                          N.C. Bar No. 7623
                          KATHERINE BARBER-JONES
                          N.C. Bar No. 44197
                          *Attorneys for Defendant*
                          Post Office Box 27808
                          Raleigh, North Carolina 27611-7808
                          Telephone (919) 828-5100
                          Facsimile (919) 828-2277
                          Email: rtb@cshlaw.com
                                  kbarber-jones@cshlaw.com

## **CERTIFICATE OF SERVICE**

  This is to certify that the undersigned has this day electronically filed the attached *Answer and Counterclaims* with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the persons identified below, and served the attached document on all of the parties to this cause by depositing a copy hereof, postage prepaid, in the United States Mail, addressed to the attorney for each said party as follows:

  Thomas L. Ogburn III
  Sarah L. DiFranco
  POYNER SPRUILL LLP
  301 South College Street, Suite 2300
  Charlotte, North Carolina 28202
  *Attorneys for Plaintiffs*

This the 24th day of May, 2017.

        CRANFILL SUMNER & HARTZOG LLP

        BY: */s/ Richard T. Boyette*
          RICHARD T. BOYETTE
          N.C. Bar No. 7623
          KATHERINE BARBER-JONES
          N.C. Bar No. 44197
          *Attorneys for Defendants*
          Post Office Box 27808
          Raleigh, North Carolina 27611-7808
          Telephone (919) 828-5100
          Facsimile (919) 828-2277
          Email: rtb@cshlaw.com
          E-mail: kbarber-jones@cshlaw.com